UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CURTIS McGEE,

                    Petitioner,              Case Number 08-11198
                                             Honorable David M. Lawson
v.

L. RAPELJE,

                    Respondent,
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

The petitioner, Curtis Omar McGee, presently confined at the Marquette Branch Prison in Marquette, Michigan, has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. The petitioner was convicted by a jury in the Saginaw County, Michigan circuit court of assault with intent to commit great bodily harm, discharging a firearm at an occupied structure, being a felon in possession of a firearm, carrying a concealed weapon, and three counts of possession of a firearm in the commission of a felony (felony firearm). He was sentenced as a second felony habitual offender to concurrent prison terms of ninety-five months to fifteen years for assault, three to six years for unlawfully discharging the firearm, forty-seven to ninety months on the felon-in-possession conviction, and a consecutive two years for the felony firearm convictions. The petitioner alleges that the trial court erred in admitting hearsay statements into evidence in violation of his right of confrontation, the prosecutor improperly impeached him with a prior felony conviction, the prosecutor's misconduct deprived him of a fair trial, the trial court failed to give the jurors a cautionary instruction on accomplice testimony, he was deprived of the effective assistance of trial counsel, and cumulative error. The respondent has filed an answer to the petition, asserting that some of the claims are procedurally defaulted and others lack merit. The Court reaches the merits

on all the claims and agrees that the petitioner's claims are meritless. Therefore the petition will be denied.

I.

The Michigan Court of Appeals described the facts of the case in its opinion on direct review, which are presumed correct in this proceeding under 28 U.S.C. § 2254(e)(1). *Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009). That court stated:

> Defendant's convictions arose from an allegedly gang-related shooting at Captain's Cove, a Saginaw nightclub. One person died and several were injured. Defendant was present at the nightclub. He drove away in a Dodge Durango, but was stopped by the police a short distance from the scene. An ammunition magazine and a nine-millimeter Ruger firearm, which was identified as one of the guns involved in the shooting, was recovered from the side of the road along the path that defendant drove as he left the nightclub. A second magazine fell to the ground as defendant exited the vehicle when he was stopped by the police. A witness, Alonzo Taylor, testified that he sold the nine-millimeter Ruger firearm to defendant approximately one month before the shooting.

*People v. McGee,* No. 263591, 2007 WL 81802, *1 (Mich. Ct. App. Jan. 11, 2007) (unpublished). The petitioner was charged with the crimes listed above and convicted as charged following a jury trial. Following sentencing, the petitioner filed a direct appeal. Before the appeal was heard, the petitioner filed a motion for a new trial, which the trial court denied on May 17, 2006. That court found that the petitioner had not established that his trial counsel was constitutional inadequate.

The petitioner then raised the following issues in the court of appeals: (1) admission of testimonial hearsay violated the petitioner's right of confrontation and denied his a fair trial; (2) prior consistent statements of testifying witnesses was improperly admitted; (3) the prosecutor was allowed improperly to impeach him with a prior conviction for fleeing from a police officer; (4) the prosecutor engaged in misconduct that denied the petitioner a fair trial; (5) the trial judge failed to give a cautionary jury instruction on use of accomplice testimony; (6) the petitioner was denied the

effective assistance of counsel; (7) and the cumulative effect of these errors denied him a fair trial. The petitioner failed to object at trial to these alleged errors, and the court of appeals reviewed claims one through six for plain error. The court of appeals affirmed the conviction, and the state supreme court denied leave to appeal. *People v. McGee*, 479 Mich. 860, 735 N.W.2d 258 (2007).

In the petition filed in the Court, the petitioner raises the following claims for relief:

I. Hearsay statements from a nontestifying declarant were improperly admitted.

II. Hearsay statements from witnesses were improperly admitted.

III. Defendant [was] improperly impeached with inadmissible conviction for fleeing and eluding and through cross-examination of specific fact of that case by prosecutor.

IV. Prosecutor misconduct.

V. The failure to instruct the jury on the dangers of accomplice testimony.

VI. Ineffective assistance of counsel.

VII. The cumulative error during the course of the trial deprived the defendant of a fair trial.

The respondent argues in his answer to the petition that the petitioner's failure to lodge a contemporaneous objection bars review of most of the claims by this court, the improper impeachment claim is based solely on state law and therefore is beyond the authority of the Court to adjudicate, and the ineffective assistance of counsel and cumulative error claims are meritless.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See*

*Wiggins v. Smith*, 539 U.S. 510, 520 (2003). As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Under that review standard, mere error by the state court does not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The respondent argues that the Court should not review several of the petitioner's issues because he did not preserve them properly in the state court, and the state's procedural rule is an adequate and independent basis for denying relief. That principle is known as the rule of procedural default. A procedural default is "a critical failure to comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997). Such a default may occur if the state prisoner fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review, e.g., make a contemporaneous objection

or file a motion for a directed verdict, *see Simpson v. Sparkman*, 94 F.3d 199, 202-03 (6th Cir. 1996). Procedural default will bar consideration of the merits of a federal claim if the state rule is actually enforced and is an adequate and independent ground for the state court's decision. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Monzo v. Edwards*, 281 F.3d 568, 575-76 (6th Cir. 2002).

The procedural default rule is not a jurisdictional bar to review of the merits of an issue, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The state court of appeals actually addressed the merits of the petitioner's arguments, albeit under a plain error review standard. Application of a procedural bar would not affect the outcome of this case, and the Court deems it more efficient in this case to proceed directly to the merits.

A.

The petitioner's first two claims attack the admission of several pieces of testimony that the petitioner characterizes as hearsay. He says that his confrontation rights were violated when Ryan Larrison, a firearms expert from the Michigan State Police Forensic Laboratory, testified that a co-worker reviewed and agreed with his laboratory findings identifying the petitioner's handgun as the source of the victim's wounds. Larrison testified that he reviewed the firearms evidence and prepared the report for the prosecution, but the procedure at the Crime Lab is to have two examiners review the evidence and agree on the conclusion before a report is released. Larrison testified that Ronald Crichton, a senior firearms expert at the Michigan State Police Crime Lab, reviewed the firearm evidence in this case and agreed with Larrison's conclusions.

In rejecting this claim, the Michigan Court of Appeals concluded that Larrison's testimony about Crichton's concurrence with his own conclusions did not affect the petitioner's substantial rights because the evidence was cumulative of Larrison's testimony. *People v. McGee,* 2007 WL 81802 at * 2. That may be true. However, out-of-court statements that are "testimonial" in nature are barred by the Confrontation Clause unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness. *See Crawford v. Washington,* 541 U.S. 36, 68-69 (2004). Laboratory reports qualify as "testimonial statements." *Melendez-Diaz v. Massachusetts*, 557 U.S. ---, 129 S. Ct. 2527, 2532 (2009).

Nonetheless, a violation of the Confrontation Clause can be harmless error. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). In a habeas proceeding, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993). The state court of appeals reasoned that Larrison's testimony that a peer reviewed his own findings on the firearms evidence was cumulative because Larrison testified to the same findings. That conclusion cannot be found unreasonable on the record of this case. Larrison's mention of his colleagues concurrence added little substance to the information, and Larrison was subject to cross-examination at the petitioner's trial.

The petitioner next alleges that Detective Robert Ruth testified about information he received from confidential and unidentified sources. Ruth testified that when the police investigate gang activity, witnesses often are uncooperative, reluctant, or fearful to testify. He also testified that gang members typically do not reveal their membership in a gang. Ruth explained that as a result, the police often gather information from confidential informants. However, Ruth never testified to

statements made by these unidentified witnesses, as the state court of appeals observed. Instead, he was asked, "Did anybody indicate to seeing who the shooters were?" to which he responded, "No. Nobody in that bar that evening would indicate who was doing the shooting. They're all afraid." Tr. Vol. V, Apr. 13, 2005, at 9. The Michigan Court of Appeals ruled that the statement "They're all afraid" was not inadmissible hearsay because it involved Ruth's own conclusion and did not involve another person's statement. Moreover, even if the testimony could be interpreted to suggest that a declarant had made a statement in which he had expressed fear, no one ever identified the person involved in the shooting. Because this testimony did not implicate the petitioner, the state court concluded that his substantial rights were not affected.

That conclusion is reasonable in light of Supreme Court precedent. The Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford,* 541 U.S. at 59 n.9 (citing *Tennessee v. Street*, 471 U.S. 409, 414 (1985) (defendant's rights under the Confrontation Clause were not violated by introduction of an accomplice's confession for the nonhearsay purpose of rebutting defendant's testimony that his own confession was coercively derived from the accomplice's statement)). "[I]n some circumstances, out-of-court statements offered for the limited purpose of explaining why a government investigation was undertaken have been determined not to be hearsay." *United States v. Gibbs*, 506 F.3d 479, 486-87 (6th Cir. 2007) (quoting *United States v. Martin*, 897 F.2d 1368, 1371 (6th Cir. 1990)). Evidence offered for background, to explain how certain events came to pass, or to give context to law enforcement officers' actions is not offered for the truth of the matter asserted and does not trigger a Confrontation Clause violation. *See United States v. Warman,* 578 F.3d 320, 346 (6th Cir. 2009) (quoting *United States v. Cromer*, 389 F.3d 662, 676 (6th Cir. 2004)).

In the present case, Detective Ruth's testimony about reluctant witnesses and gang membership did not violate the petitioner's Sixth Amendment confrontation right because it did not relate a statement by a declarant. There was no hearsay, and therefore no Concforntation Clause violation.

The petitioner next attacks Detective Ruth's testimony that the shooting was gang-related, there were mostly north-side gang members at the nightclub that night, the people who were shot were from the south side, the south-side people did not have guns, people from the north side had since died in gang-related deaths, and the petitioner was a north-side gang member. The petitioner also contends that Detective Ruth improperly testified that the gang memberships of inmates was listed on jail inmate logs at the Saginaw County Jail to separate members of rival gangs in jail, and that the petitioner's jail log indicated that he was affiliated with a gang called "The Projects."

The state court of appeals rejected the petitioner's hearsay and Confrontation Clause challenge to that testimony because Detective Ruth never related a single out-of-court statement. Instead, he related his own experiences and observations as a police officer working with gang-related crimes. Moreover, the petitioner testified at trial that he was affiliated with "The Projects" gang and was a friend of members of that group. He also acknowledged that he was incarcerated in a cell at the jail with inmates from the north end and that it was probably not a good idea for him to be placed in a south-end cell at the jail. Terrance Moore, who testified for the petitioner, also acknowledged that he had been a member of the north-end "Projects" gang, and all of the photographs that had been taken of him and the petitioner contained persons from the north end.

Ruth's testimony that the shooting was gang related was based on his experience, and in-court witness testimony, rather than out-of-court interviews with witnesses who did not testify.

His testimony about gang involvement did not violate the Confrontation Clause violation. *See United States v. Stone,* 432 F.3d 651, 653-54 (6th Cir. 2005).

The petitioner next contends that Detective Ruth was permitted to testify that Sherice Byrd, the owner of the Dodge Durango truck the petitioner was driving, had reported that her vehicle had been stolen that evening, but it was later revealed that her statement was false and she pleaded guilty to filing a false police report. That testimony did not constitute hearsay; it was not offered for the *truth* of what was asserted, but rather to show the statement was a *lie*. No hearsay, no Confrontation Clause violation. *See Crawford*, 541 U.S. at 59 n.9 (citing *Street*, 471 U.S. at 414).

The petitioner next contends that his right to confrontation was violated when the court admitted a 911 tape recording that reported that a blue Durango left the scene of the shooting. The state court of appeals held that the tape was non-testimonial and therefore the Confrontation Clause did not apply.

The Supreme Court made clear that the Confrontation Clause applies only to out-of-court statements that are "testimonial" in nature. *See Whorton v. Bockting*, 549 U.S. 406, 418-20 (2007) (explaining that, under *Crawford*, the Confrontation Clause has no application to non-testimonial out-of-court statements); *Davis v. Washington*, 547 U.S. 813, 821 (2006) ("It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause."). The *Crawford* Court did not define the term "testimonial," but it "provided examples of those statements at the core of the definition, including prior testimony at a preliminary hearing, previous trial, or grand jury proceeding, as well as responses made during police interrogations." *United States v. Saget*, 377 F.3d 223, 228 (2d Cir. 2004) (citing *Crawford*, 541 U.S. at 51-52). In *Davis*, the Court explicated

this list and explained that "[s]tatements are . . . testimonial when the circumstances objectively indicate that there is no . . . ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis*, 547 U.S. at 822; *see also Miller v. Stovall*, 608 F.3d 913, 924 (6th Cir. 2010) (stating that "[t]he proper inquiry . . . is whether the declarant intends to bear testimony against the accused [which] in turn, may be determined by querying whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime" (quoting *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004)).

The 911 call was made immediately after the shooting and during an emergency. The 911 caller described the blue Durango leaving the crime scene primarily to help the police to handle the emergency as it was still happening. The state court's conclusion that the caller's statements were non-testimonial reasonably applies *Davis*.

The petitioner argues that prior statements of Alonzo Taylor and Antaurean Jones were inadmissible hearsay, and their admission violated his right of confrontation. However, both Taylor and Jones testified at trial and the petitioner had a fair opportunity to cross-examine them. The petitioner has not alleged that his lawyer's questioning of these men was curtailed in any way. Once there is a fair opportunity to cross-examine a witness who personally appears in court, the Confrontation Clause is satisfied. *United States v. Owens,* 484 U.S. 554, 560 (1988); *see also Crawford,* 541 U.S. at 59 n.9; *California v. Green*, 399 U.S. 149, 162 (1970); *United States v. Mayberry*, 540 F.3d 506, 516 (6th Cir. 2008).

B.

The petitioner next contends that the prosecutor improperly impeached him with evidence of a prior conviction for fleeing or eluding a police officer. He argues that the conviction was inadmissible because it did not have an element of theft, dishonesty, or false statement. That issue does not invoke federal law; rather, the petitioner raises a claimed violation of state evidence law. However, it is "not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Ibid.* Errors in the application of state law, especially rulings on the admissibility of evidence, usually are not questioned by a federal habeas court. *See Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir. 2000).

The Michigan Court of Appeals disposed of the issue by clarifying that the state did not offer the evidence to impeach the petitioner in any event. Instead, the petitioner volunteered this evidence on direct examination, making the subject fair game for cross-examination. The court noted that the prosecutor's cross-examination was limited to eliciting the information that the petitioner used the same vehicle during the earlier fleeing and eluding incident as he was driving when the police stopped him after the shooting incident. There was evidence that the petitioner did not drive the vehicle to the nightclub, and he denied knowing about the magazine clip that fell from the vehicle after he was stopped by the police, so the Michigan Court of Appeals concluded that evidence showing that the petitioner had access to the vehicle was "arguably relevant." *People v. McGee,* 2007 WL 81802 at *4.

The state court's rationale concluding that the evidence was admissible is reasonable, and the evidence did not render the trial fundamentally unfair. Habeas relief on this claim is not warranted.

C.

The petitioner next contends that he was deprived of a fair trial because of prosecutorial misconduct. "Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). Prosecutorial misconduct will form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974); *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999) (stating that "[p]rosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation"). The first question to consider is whether the prosecutor's conduct or remarks were improper. *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006). If they were, the court must decide whether the improper acts were so flagrant as to warrant relief. *Id.* at 516. Flagrancy depends on four factors: 1) whether the actions "tended to mislead the jury or prejudice the defendant"; 2) whether the actions were isolated or represent a pervasive course of conduct; 3) whether the acts represent a deliberate attempt to affect the outcome of the case; and 4) the overall strength of the case. *Millender*, 376 F.3d at 528.

The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances surrounding each individual case." *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982). The Court focuses on "'the fairness of the trial, not the culpability of the

prosecutor.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993)). "The Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle*, 457 F.3d at 516 (quoting *Donnelly*, 416 U.S. at 645).

The petitioner first contends that the prosecutor engaged in misconduct by cross-examining him about his lack of employment and his involvement in illegal drug activity. The petitioner also contends that the prosecutor engaged in misconduct by repeatedly bringing up the petitioner's membership in a gang. The Michigan Court of Appeals rejected this claim because the evidence suggested that the shooting was gang-related and the questions and comments concerning the petitioner's drug activity and not having a job were not improper because they were made in the context of establishing his affiliation with a gang. Therefore, the court determined that the prosecutor did not commit misconduct by asking those questions.

That conclusion is reasonable. Gang affiliation can be relevant, especially where the interrelationship between people is a central issue. *See United States v. Gibbs*, 182 F.3d 408, 430 (6th Cir. 1999). The Michigan Court of Appeals concluded that the prosecutor's questions and comments about the petitioner's lack of employment and alleging that the petitioner sold drugs were relevant to establishing the petitioner's membership in a gang so as to establish his involvement in this gang- related shooting. A prosecutor does not commit misconduct by asking witnesses relevant questions. *See Slagle,* 457 F.3d at 518. The prosecutor's questions and the comments concerning the petitioner's lack of a legitimate job and his involvement with selling drugs were proper; they did

not deprive the petitioner of a fair trial. Likewise, questions and comments about the petitioner's involvement with gangs were relevant because the shooting was gang-related.

The petitioner next contends that a number of the prosecutor's comments and questions shifted the burden of proof to the petitioner. The Michigan Court of Appeals held that if that occurred, the trial court's instructions that the petitioner was presumed to be innocent, the prosecutor was required to prove each element of the crime charged beyond a reasonable doubt, and that the "defendant is not required to prove his innocence or do anything," were sufficient to cure any prejudice and to protect the petitioner's substantial rights. *People v. McGee,* 2007 WL 81802 at *5.

This Court agrees. The prosecution's argument did not deprive the petitioner of a fair trial because any possible prejudice that might have resulted from the comment was cured by the trial court's instructions regarding the proper burden of proof. *See Scott v. Elo,* 302 F.3d 598, 603-04 (6th Cir. 2002).

The petitioner next contends that the prosecutor misrepresented the facts or argued facts not introduced into evidence, specifically referring to the conduct of witnesses and others in the courtroom during trial, and evidence that the petitioner was involved in a gang. The prosecutor argued that Dontae Mills (to whom the petitioner refers as Dontae Williams in his brief) was present in the courtroom to intimidate witnesses. Misrepresentation of evidence by a prosecutor can amount to substantial error because doing so "may profoundly impress a jury and may have a significant impact on the jury's deliberations." *Washington v. Hofbauer,* 228 F.3d 689, 700 (6th Cir. 2000) (quoting *Donnelly*, 416 U.S. at 646). The prosecutor may not argue to the jury any facts that have not been introduced into evidence and that are prejudicial. *Byrd v. Collins*, 209 F.3d 486, 535 (6th

Cir. 2000). However, prosecutors are given leeway to argue reasonable inferences from the admitted evidence. *Ibid.*

The prosecutor's arguments here were supported by the evidence or by reasonable inferences from the evidence. The record indicated that witness Anturean Jones smiled and nodded to Dontae Mills as he took the witness stand. *See* Tr. V, Apr. 13, 2005, at 33-34. That evidence supported the prosecutor's argument that Mills was winking and nodding at witnesses and that he was in the courtroom to intimidate certain witnesses. The petitioner also claims that the prosecutor implied that the vehicle that the petitioner was driving fled the scene of the shooting. However, officers testified that the petitioner's vehicle drove away from the crime scene at a high rate of speed as the police arrived. *See* Tr. III, Apr. 8, 2005, at 14, 39-40. Moreover, there was ample evidence to establish the petitioner's involvement in a gang, including his own testimony to that fact. Finally, the trial court informed the jury that the lawyers' questions and arguments were not evidence, *see* Tr. VI, Apr. 14, 2005, at 76. Federal habeas relief is not warranted on this claim. *Byrd*, 209 F.3d at 532-33.

The petitioner lastly claims that the prosecutor committed misconduct by eliciting evidence that witnesses Marcel Bogan, Antaurean Jones, and Terrance Moore were incarcerated at the time of the petitioner's trial. In rejecting this claim, the Michigan Court of Appeals noted that defense counsel elicited testimony from Moore that he was incarcerated. Jones testified that he was being held in jail as a material witness, which the Michigan Court of Appeals concluded was relevant to his bias as a witness. The petitioner has not explained how evidence that the others were in custody prejudiced him.

The petitioner has not shown that the prosecutor engaged in misconduct. There is no need, therefore, to explore the other factors set out in *Millender v. Adams*, 376 F.3d at 528. The petitioner was not denied a fair trial by the prosecutor's actions in this case.

D.

The petitioner next contends that the trial court erred by failing to give the cautionary jury instructions on accomplice testimony. He says that Alonzo Taylor qualifies as an accomplice. But the Michigan Court of Appeals disagreed, remarking that it was unclear that Taylor was an accomplice to this crime. The court further noted that the prosecution presented evidence apart from Taylor's testimony that linked the petitioner to the shooting and to the to the nine-millimeter Ruger firearm that Taylor testified he sold to the petitioner.

An erroneous jury instruction warrants habeas corpus relief only where the instruction "'so infected the entire trial that the resulting conviction violates due process.'" *Estelle v. McGuire*, 502 U.S. at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). "[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some [constitutional] right." *Donnelly*, 416 U.S. at 642-43 (quoting *Cupp*, 414 U.S. at 164). The jury instructions "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72 (quoting *Cupp*, 414 U.S. at 147). The court must "inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Ibid.* (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990)). "A habeas petitioner's burden of showing prejudice is especially heavy when a petitioner claims that a jury instruction was incomplete, because an omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the

law." *Hardaway v. Withrow,* 305 F.3d 558, 565 (6th Cir. 2002) (quoting *Hardaway v. Withrow,* 147 F. Supp. 2d 697, 101 (E.D. Mich 2001)).

The Sixth Circuit has held, even on direct appeals from federal criminal trials, that a trial court's failure to give a special cautionary instruction on accomplice testimony is not reversible error, as long as the court has given the jury a general instruction on witness credibility and the various considerations that it should take into account in weighing the testimony of various witnesses. *United States v. Carr,* 5 F.3d 986, 992 (6th Cir. 1993); *Scott v. Mitchell,* 209 F.3d 854, 883 (6th Cir. 2000) ("We have since followed *Carr* in not requiring accomplice instructions as a general matter. . . .").

In this case, the trial judge instructed the jury that it was to evaluate the credibility of all witnesses and consider any bias, prejudice, or personal interest that a witness might harbor. That instruction, together with the general instructions on witness credibility, *see* Tr. VI, pp. 77-79, alerted the jury to the various considerations it should take into account when weighing testimony. Those instructions gave the jury an ample basis for rejecting the testimony of the accomplice witness if it had chosen to do so. Therefore, the trial court's failure to instruct the jury more specifically on the testimony of accomplices did not deprive the petitioner of a fair trial or due process of law.

E.

The petitioner next contends that he was deprived of the effective assistance of counsel because his lawyer did not object to much of the evidence and argument discussed above. In *Strickland v. Washington,* 466 U.S. 668 (1984),the Supreme Court established a two-pronged test for determining whether a criminal defendant has received ineffective assistance of counsel. First, the convicted person must prove that counsel's performance was deficient, which "requires showing

that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Second, the convict must show that counsel's deficient performance prejudiced him. Prejudice is established by a "showing that counsel's errors were so serious as to deprive the defendant of a fair trial." *Ibid.*

The Supreme Court explained that to establish deficient performance, a habeas petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id.* at 690. To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The Sixth Circuit, applying the *Strickland* standard, has held that a reviewing court must focus on whether counsel's alleged errors "have undermined the reliability of and confidence in the result." *McQueen v. Scroggy,* 99 F.3d 1302, 1311 (6th Cir. 1996).

The petitioner's arguments that defense counsel was ineffective for failing to object to the alleged hearsay statements on Confrontation Clause grounds have no traction here. As noted earlier, most of that testimony did not violate the Confrontation Clause. Therefore, counsel was not ineffective for failing to object to its admission on this basis. *See, e.g. United States v. Johnson,* 581 F.3d 320, 328 (6th Cir. 2009). The testimony found to have been admitted in violation of the Confrontation Clause was harmless. "[T]he prejudice question, for purposes of an ineffective assistance of counsel claim, 'is essentially the same inquiry as made in a harmless-error analysis.'" *Johnson v. Renico,* 314 F. Supp. 2d 700, 711 (E.D. Mich. 2004). Because the admission of this evidence was harmless, the petitioner was not prejudiced by counsel's failure to object.

The petitioner next contends that his counsel failed to properly cross-examine or impeach Jeff Reynolds, the shooting victim, with a prior conviction for filing a false police report. That impeachment would not have amounted to much at the trial because Reynolds's testimony did not damage the petitioner. Reynolds testified about a general argument between several individuals, including the petitioner, but he said that he did not see anyone with a gun that night nor did he see who shot him. On cross-examination, Reynolds reiterated that he did not see the petitioner do or say anything on the night in question. Even if counsel was deficient by failing to impeach Reynolds with his prior conviction, the petitioner has failed to demonstrate a reasonable probability that any additional cross-examination of this witness by defense counsel would have affected the result of the proceeding. *See Moss v. Hofbauer,* 286 F.3d 851, 865-66 (6th Cir. 2002).

The petitioner next contends that counsel was ineffective for failing to cross-examine Alonzo Taylor about his refusal to admit his own involvement in the shooting incident. Defense counsel cross-examined Taylor extensively at trial. Taylor admitted on direct examination that he had been charged as a co-defendant in this case and was facing the same criminal charges as the petitioner. In response to questions from counsel, Taylor admitted that he was testifying against the petitioner as part of a plea agreement with the prosecutor and acknowledged that he expected to receive a benefit from testifying against the petitioner. Taylor admitted that several nine millimeter handguns had been stolen from his house, although he denied that one of them was the gun that he had sold to the petitioner. Taylor admitted that he did not see the petitioner in possession of a handgun on the night of the shooting.

Undisclosed impeachment evidence is considered cumulative "when the witness has already been sufficiently impeached at trial." *Davis v. Booker,* 589 F.3d 302, 309 (6th Cir. 2009) (quoting

*Brown v. Smith*, 551 F.3d 424, 433-34 (6th Cir. 2008)). Because Taylor's credibility already had been impeached, the petitioner was not prejudiced by counsel's failure to impeach Taylor with cumulative impeachment evidence.

The petitioner next contends that counsel was ineffective for failing to link Terrance Moore to the magazine clip that fell out of the petitioner's car at the time of the police stop. Moore had been called as a defense witness and testified that he drove Sherice Byrd's blue Durango on the night of the shooting and the petitioner was a passenger in the car. Moore testified that he did not see the petitioner in possession of a gun or any gun magazines on the night in question.

Moore also testified that Byrd permitted other persons to drive her vehicle. That evidence allowed defense counsel to tie the magazine clip to someone other than the petitioner. More importantly, counsel was not ineffective for failing to argue that Moore owned the magazine clip because that evidence might have undermined his credibility after Moore testified positively for the petitioner at trial.

The petitioner next contends that his counsel was ineffective for questioning the petitioner on direct examination about his lack of a high school diploma, lack of employment, history of selling drugs, and prior conviction for fleeing and eluding the police. In rejecting this claim, the Michigan Court of Appeals indicated that defense counsel had explained at a post-trial evidentiary hearing that he pursued this line of questioning to show that, although the petitioner had a troubled background, his background did not involve assaultive behavior. Counsel also sought to present the petitioner as someone who was trustworthy, not a liar, even if this testimony did not always portray the petitioner "in a favorable light." *People v. McGee,* 2007 WL 81802 at *7.

The Court agrees that defense counsel's questions were part of a reasonable trial strategy. Reasonable strategic choices by defense counsel do not amount to deficient performance. Counsel's conduct is entitled to the strong presumption that it falls within the wide range of reasonable professional assistance, and the petitioner must overcome the presumption that the conduct "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Higgins v. Renico*, 470 F.3d 624, 632 (6th Cir. 2006) (observing that "[s]uch [strategic] choices can vary greatly from attorney to attorney and from case to case, and reviewing courts must scrutinize these choices with a great deal of deference"). The petitioner has not overcome that burden here; the state courts' conclusion that defense counsel properly examined the petitioner at trial was a reasonable application of *Strickland*.

The petitioner next contends that counsel was ineffective by failing to request a cautionary instruction on accomplice testimony. In *Krist v Foltz*, 804 F.2d 944 (6th Cir. 1986), the Sixth Circuit found a criminal defense attorney's failure to request an accomplice instruction "insignificant" where the witness's "unsavory past and his motive for naming the defendant as his companion in crime were fully developed by counsel on cross-examination." *Id.* at 947.

Defense counsel thoroughly covered Alonzo Taylor's involvement in the same criminal offenses as the petitioner in this incident, as well as his motive for testifying against the petitioner in his cross-examination of Taylor. Counsel's failure to request a specific instruction on accomplice testimony did not rise to the level of ineffective assistance of counsel and would not entitle the petitioner to habeas relief. *Ibid*.

The petitioner alleges that counsel was ineffective for failing to object to the prosecutor's alleged misconduct. However, the Court has determined that the prosecutor did not behave

improperly. The failure to lodge a frivolous objection does not equal deficient performance. *Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999).

G.

The petitioner finally contends that he is entitled to habeas relief because of the cumulative error. The cumulative weight of alleged constitutional trial errors in a state prosecution does not warrant federal habeas relief because there is no clearly established federal law permitting or requiring the cumulation of distinct constitutional claims to grant habeas relief. *Moore v. Parker,* 425 F.3d 250, 256 (6th Cir. 2005). Therefore, the petitioner is not entitled to habeas relief on the grounds of cumulative error.

III.

The state court decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [dkt # 1] is **DENIED**.

s/David M. Lawson_____
DAVID M. LAWSON
United States District Judge

Dated: December 30, 2010

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 30, 2010.

s/Deborah R. Tofil
DEBORAH R. TOFIL